**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RAMIRO SALAZAR, NYUDLYA
MONTYSHEVA, and PATRUS
BALBINOT, on behalf of themselves and
others similarly situated,

              Plaintiffs,

       v.

ROBERT MALTA and WESTSIDE
TOMATO, INC d/b/a ARTE CAFÈ,

            Defendants.

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT AND**
**JURY DEMAND**

No. _____

Plaintiffs, on behalf of themselves and others similarly situated to them, by and through their undersigned attorneys, respectfully allege as follows:

### JURISDICTION AND VENUE

1.      This Court has federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"). This Court has supplemental jurisdiction over the New York state law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2.      Venue is proper in this District because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

### THE PARTIES

3.      Plaintiffs are tipped employees who worked at Arte Cafè and were paid the food service workers wage and received part of their pay in tips.

4.     Defendant, Westside Tomato, INC, ("Westside Tomato") is a New York corporation with a registered address at 106 West 73rd Street, New York, NY 10023 doing business as Arte Cafè.

5.     Upon information and belief, Westside Tomato owns and operates Arte Cafè.

6.     Westside Tomato and Arte Cafè are collectively referred to herein as the "Corporate Defendants."

7.     Defendants operate two banquet rooms in the back of the restaurant

8.     Upon information and belief, the Corporate Defendants have an annual gross volume of sales in excess of $500,000.

9.     Defendant, Robert Malta ("Malta"), is an individual with a business address at 106 West 73rd Street, New York, New York, 10023.  Defendant Malta is the President of the Corporate Defendants.  He exercises sufficient control over the Corporate Defendants' daily operations to be considered an "employer" within the meaning of the FLSA and the NYLL.

10.     Upon information and belief, Malta exercised complete control over Arte Cafè. For example, if he didn't like the tablecloths he would order the staff to replace them.

11.     Malta had the power to hire and fire employees. For example, during the summer 2016 he hired "Charlemagne" to make coffee and directed his payment from pooled tips.

12.     Malta regularly directed the staff to serve guests according to his preference and would demonstrate how he required the staff to perform.

13.     Malta, through Peter McLean and other managers exercised control over the staff.

14.     Malta had the power to change the way tipped employees were compensated. He demonstrated this power when he added a new category to the tip out sheet of barista which reduced the compensation of the other employees.

15.    During the relevant time period, Malta's ex-girlfriend, Bobbie Pellicciaro-Maio, a/k/a "Bobbie Girl" maintained the books, payroll, and records for Arte Cafè.

## MANAGERS SHOULD NOT PARTICIPATE IN TIP OUT

16.    During the relevant time period, Plaintiff Salazar confronted Luciano about management's practice of taking 25% of pooled tips from the banquet parties for distribution among the managers. Luciano became angry and told Salazar the practice had "been done for years."

17.    Peter McLean ("McLean") is the General Manager of Arte Cafè and has the power to discipline employees.

18.    McLean exercised total control over staffing private banquets

19.    Upon information and belief, McLean is authorized to close Arte Cafè at the end of the night.

20.    McLean is authorized to void items off a guest's check. Only managers have that authority.

21.    McLean fired and hired staff.

22.    McLean fired Plaintiff Salazar for complaining about managers participation in the tip out.

23.    McLean disciplined staff either formal or, more often, verbally.

24.    McLean would take 25% of the total tips from the private banquet. The remaining pool was distributed to staff. *See* **Exhibit A.**

25.    McLean regularly reported to Malta.

26.    Victor Lopez ("Lopez"), is a manager at Arte Cafè and has the power to discipline employees.

27.    Lopez fired and hired staff.

3

28.     Lopez exercised total control over staffing private banquets

29.     Upon information and belief, Lopez is authorized to close Arte Cafè at the end of the night.

30.     Lopez is authorized to void items off a guest's check. Only managers have that authority.

31.     Upon information and belief, Lopez would take 25% of the total tips from the private banquet. The remaining pool was distributed to staff. *See* **Exhibit A.**

**Plaintiffs**

32.     Plaintiff, Ramiro Salazar ("Salazar") was employed by Defendants as a server at Arte Cafè from May 19, 2016 until December 31, 2016.

33.     Plaintiff, Nyudlya Montysheva ("Montysheva") was employed by Defendants as a server at Arte Cafè from April 2016 until January 1, 2017.

34.     Plaintiff, Patrus Balbinot ("Balbinot") was employed by Defendants as a server at Arte Cafè from approximately June 2015 to August 2016.

**FLSA COLLECTIVE ALLEGATIONS**

35.     Plaintiffs Salazar, Montysheva, and Balbinot bring Counts 1 and 2 as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt persons employed by Defendants at Arte Cafè as a servers and/or baristas on or after February of 2014 ("FLSA Collective Plaintiffs").

36.     At all relevant times, Plaintiffs Salazar, Montysheva, and Balbinot and the members of the FLSA Collective are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decision, plan and common policies, programs, practices, procedures, protocols, routines, and rules of willfully failing and refusing to pay them at the legally required minimum wage for all hours worked and

one-and-one half times this rate for work in excess of forty (40) hours per workweek, and allowing tip ineligible employees to share in their tips.  The claims of Plaintiffs Salazar, Montysheva, and Balbinot stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

37.    Counts 1 and 2 are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b).  The FLSA Collective Plaintiffs are readily ascertainable.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants.  Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

### NYLL CLASS ALLEGATIONS

38.    Plaintiffs bring Counts 3, 4, 5, and 6 under the NYLL pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23 on behalf of all non-exempt persons employed by Defendants at Scarpetta employed as a busser, runner, barback, bartender, server, captain, and barista on or after February 25, 2011 ("NYLL Class").

39.    The members of the NYLL Class are readily ascertainable.  The number and identity of the Class members are determinable from the records of Defendants.  The hours assigned and worked, the positions held, and the rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under F.R.C.P. 23.

40.    The number of persons in the proposed Class is so numerous that joinder of all members would be unfeasible and impractical.  The disposition of all of their claims through a class action will benefit the parties and the court.  The identities of the proposed Class members are ascertainable through Defendants' payroll records.  Although at this time the exact number of members is unknown, it is believed that the Class will consist of more than 100 individuals.

41.  Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which could be sought by each member of the Class in separate actions.  All members of the NYLL Class are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decision, plan and common policies, programs, practices, procedures, protocols, routines, and rules of failing to pay minimum wage, illegal retention of tips, and failure to give proper notice in payroll checks.  Plaintiffs and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

42.  Common questions of law and fact exist as to the proposed Class members that predominate over any questions affecting only individual members, including but not limited to:

    a.  whether Defendants maintained an unlawful tip pool in the banquet room;

    b.  whether Defendants required Class members to share tips with tip-ineligible employees;

    c.  whether Defendants tips were invalid because tip-ineligible employees participated in the tip-out policy.

    d.  whether the paychecks for banquet workers were defective because defendants improperly paid banquet workers the wrong wage.

    e.  whether Defendants unlawfully utilized the "tip credit" when paying Class members;

    f.  whether Plaintiffs and the members of the Class are entitled to damages, liquidated damages, and if so, the method by which such damages should be calculated;

    g.  whether Defendants are liable for the attorneys' fees and costs of the members of the Class.

43. Plaintiffs will fairly and adequately protect the interest of the proposed Class members. They have no interests antagonistic to the members of the proposed Class, and they will vigorously pursue this action via attorneys who are competent, skilled, and experienced in litigating wage and hour class actions.

44. The nature of this action makes a class action a superior method for the fair and efficient adjudication of the controversy for the following reasons:

   a. This case involves a large corporate Defendant and an individual Defendant, both of whom have vast resources, and many individual proposed Class members who have limited resources and who have relatively small claims with common questions of law and fact;

   b. If each individual was required to file a separate law suit, Defendants, with their vast resources, would be able to exploit and overwhelm the limited resources of the proposed Class members;

   c. Requiring each individual to file a separate law suit will discourage members of the potential Class still employed by Defendants from asserting lawful claims because of an appreciable fear that Defendants will retaliate against them;

   d. Prosecuting separate law suits by each member of the proposed Class will create a substantial risk of inconsistent or varying verdicts; will establish potentially incompatible standards of conduct for Defendants; will result in legal determinations as to each individual that are dispositive of the interest of the other proposed Class members who are not parties to the adjudications; and will impair or impede the ability of the proposed Class members to protect their own interests;

    e.    The individual claims are not large enough to warrant the costs and expenses that will be incurred in individual prosecution making it difficult, if not impossible, for the individuals to redress the wrongs done to them; and

    f.    The cost to the legal system for individual adjudication will be substantial making the class action superior.

## STATEMENT OF FACTS

45.    Defendants committed the following acts knowingly, intentionally, and willfully.

46.    Defendants knew that the nonpayment of minimum wage, illegal deductions from tips, and failure to give proper payroll notices would economically injure Plaintiffs, the FLSA Collective Plaintiffs, and members of the Class and violated federal and state laws.

## Class and Collective Allegations

47.    Defendants paid tipped employees a tip credit hourly wage, which was lower than the federal and state minimum wages.[1]

48.    Defendants were not entitled to use a tip credit because they illegally retained portions of Plaintiffs' FLSA Collective and Plaintiffs' Class members' tips in the banquet room.

49.    Defendants never included information relating to deductions and allowances on Plaintiffs' wage statements, as required by NYLL § 195(3) and 12 NYCRR § 146-2.3. Specifically, Plaintiffs' paystubs indicate they were paid tipped wages when the wages should have been regular wages or non-tipped wages. Upon information and belief, Defendants were aware of their statutory obligation, and their failure to abide by the statute was willful.

---

[1] From January 1, 2016 to December 29, 2016 the New York tip credit minimum wage was $7.50, and the New York minimum wage was $11.00. From December 31, 2016 to the present, the New York tip credit minimum wage was $7.50, and the New York minimum wage was $11.00. The federal minimum wage remains at $7.25.

50.     At all relevant times, Defendants imposed on tipped employees at Arte Cafè a mandatory tip pool and required tipped employees to share a portion of their tips with certain individuals who were ineligible to participate in a tip pool in the banquet rooms. For example, during the relevant times, the managers at Arte Cafè claimed the first 25% of pooled tips and distributed among themselves. The managers are McLean, Lopez, and Luciano.

51.     During the relevant time period, Plaintiff Salazar confronted McLean taking 25% of pooled tip. McLean said that the arrangement was the way Defendant Malta wanted it.

52.     Defendants required tipped employees to share their tips with certain employees that are not eligible to receive tips, including "Charlemagne," the barista who did not regularly run coffee or interact with customers.

### COUNT 1
### (FLSA Minimum Wage Violations, 29 U.S.C. §§ 201, *et seq.*,
### Brought by Plaintiffs on Behalf of Themselves and the FLSA Collective Plaintiffs)

53.     Plaintiffs Salazar, Montysheva, and Balbinot, on behalf of themselves and the FLSA Collective Plaintiffs, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

54.     Throughout the statute of limitations period covered by these claims, Defendants knowingly failed to pay Plaintiffs and the members of the FLSA Collective the full federal minimum wage for each hour worked in the banquet room.

55.     Defendants' unlawful conduct was willful within the meaning of the FLSA, 29 U.S.C. § 255(a), so a three year statute of limitations applies.

56.     Plaintiffs Salazar, Montysheva, and Balbinot, on behalf of themselves and the members of the FLSA Collective, seek damages in the amount of their respective unpaid minimum wage compensation, liquidated damages, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

9

## COUNT 2
### (Misappropriation of Gratuities, NYLL § 196-d
### Brought by Plaintiffs on Behalf of the NYLL Class)

57.    Plaintiffs, on behalf of themselves and the members of the NYLL Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

58.    Pursuant to NYLL § 196-d, "[n]o employer or his agent or an officer or agent of any corporation, or any other person. . . shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."

59.    At all relevant times, Defendants collected and retained gratuities and service charges in the banquet rooms and then unlawfully compelled Plaintiffs and the proposed members of the NYLL Class to participate in an illegal mandatory tip pool in which the managers and the barista participated in receiving.

60.    As a result of Defendants' unlawful conduct, Plaintiffs and the proposed members of the NYLL Class were denied tips to which they were otherwise entitled.

61.    Defendants willfully and intentionally violated § 196-d of the NYLL.

62.    As a result of Defendants' willful and intentional unlawful conduct, Plaintiffs and the proposed members of the NYLL Class are entitled to damages in an amount to be determined at trial, liquidated damages, attorneys' fees, costs, pre-judgment interest, post-judgment interest, all other damages available under New York law, and such other legal and equitable relief as this Court deems just and proper.

## COUNT 3
### (New York Minimum Wage Violations, NYLL § 652, 12 NYCRR 146-1.3
### Brought by Plaintiffs on Behalf of the NYLL Class)

63.    Plaintiffs, on behalf of themselves and the members of the NYLL Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

64.     Throughout the statute of limitations period covered by these claims, Defendants knowingly failed to pay Plaintiff and the members of the NYLL Class the full New York minimum wage for each hour worked.

65.     As a result of Defendants' willful and intentional unlawful conduct, Plaintiffs and the proposed Class members are entitled to damages in an amount to be determined at trial, liquidated damages, attorneys' fees, costs, pre-judgment interest, post-judgment interest, all other damages available under New York law, and such other legal and equitable relief as this Court deems just and proper.

## COUNT 4
### (Automatic Tip Credit Damages under NYLL §§ 195(3) and N.Y. Comp. Codes R. & Regs. Tit. 12, §§ 146-1.2)

66.     Plaintiffs, on behalf of themselves and the members of the NYLL Class, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

67.     Defendants misappropriated wages for the banquet rooms. Plaintiffs should have been paid the minimum wage

68.     Defendants incorrectly paid the Plaintiffs the tip credit wage when they should have been paid minimum wage.  Plaintiffs' weekly paystubs do not record that any of the minimum wage was paid, instead incorrectly cites the tip credit wage.  Defendants' incorrect payment violated 12 NYCRR §§ 146-2.2 & 146-2.3 and should result in an automatic loss of tip credit for the years in which the violation occurred.

69.     As a result of Defendants' unlawful conduct, Defendants are liable to Plaintiffs in an amount of damages to be determined at trial, including compensatory damages, statutory damages and such other relief as this Court deems just and proper.

70.     Defendants are liable to damages of not more than $5,000.

11

## COUNT 5
### (Retaliation against Ramiro Salazar by Westside Tomato, Inc., Arte Cafè, and Robert Malta in Violation of NYLL § 215)

71.    Plaintiff Salazar,  reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

72.    Defendants willfully and unlawfully retaliated against Plaintiff for his engagement in activities protected under the NYLL, namely for complaining during meetings with managers discussing the restaurants tip-out policy in the banquet rooms.

73.    In retaliating against Plaintiff, Defendants acted in knowing or reckless disregard of Plaintiff's statutorily protected rights.

74.    Defendants fired Plaintiff on December 31, 2016.

75.    As a result of Defendant's unlawful conduct, Plaintiff is entitled to damages in an amount to be determined at trial, including compensatory damages for monetary damages and emotional distress, liquidated damages, punitive damages, attorney's fees, costs, post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

76.    In addition to the above damages, Plaintiff is entitled to a civil penalty against the employer in the amount of $20,000, under § 215(1)(b).

### REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and those similarly situated to them, respectfully request the following relief:

A.    Designation of this action as a collective action on behalf of the members of the FLSA Collective and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B.      Designation of Plaintiffs Salazar, Montysheva, and Balbinot as Representatives of the FLSA Collective Plaintiffs;

C.      Certification of this action as a class action; employed by Defendants at Arte Cafè who participated in the mandatory tip pool in the banquet room as a busser, runner, barback, bartender, server, and captain on or after February 16, 2011;

D.      Designation of Plaintiffs as Representatives of the NYLL Class;

E.      Back wages, misappropriated tips, the tip credit;

F.      An award of damages, according to proof, to be paid by Defendants;

G.      Liquidated damages;

H.      Penalties available under applicable laws;

I.      A civil penalty of $20,000 under § 215(1)(b);

J.      A civil penalty under § 198(1-b) in an amount to be determined at trial;

K.      A civil penalty under § 198(1-d) in an amount to be determined at trial;

L.      Pre-judgment and post-judgment interest;

M.      Attorneys' fees and costs; and

N.      Such other relief as the Court sees fit to award.

## DEMAND FOR JURY TRIAL

A jury trial is requested on all claims alleged herein.

Dated: New York, NY
        February 16, 2017

By: _/s/ Jeffrey E. Goldman__
        Jeffrey E. Goldman, Esq.
        THE LAW OFFICES OF JEFFREY E. GOLDMAN
        501 Fifth Ave., Suite 1900
        New York, NY  10017
        T: 212-983-8999
        F: 212-949-5085

*Attorney for Plaintiffs, proposed FLSA Collective Members, and proposed Class*

# EXHIBIT A

| LUNCH | DINNER ✓ | DATE: 12/9/16 | | | |
|---|---|---|---|---|---|
| EMPLOYEE | CASH DUE + | | CASH DUE - | | |
| NAME | | AMOUNT | PAID | SIGNATURE | NOT PAID |
| WAITER CAMIRO | | 182 | | | ✓ 182 |
| BUS-BOY TROY | | 182 | | | ✓ 182 |
| RUNNER SHUAJB | | 182 | | | ✓ 182 |
| COFFEE JULIA | | 182 | | | ✓ 182 |
| BAR THEO | | 182 | | | ✓ 182 |
| BARBACK RACHEL | | 182 | | | ✓ 182 |
| DESSERT KATERINA | | 182 | | | ✓ 182 |
| BARTENDER NADIA | | 120 | | | ✓ 120 |

| LUNCH | DINNER | DATE: | | | |
|---|---|---|---|---|---|
| EMPLOYEE | CASH DUE + | | CASH DUE - | | |
| NAME | | AMOUNT | PAID | SIGNATURE | NOT PAID |
| WAITER ODIL | | 120 | | | ✓ 120 |
| BUS-BOY GIO | | 92 | | | ✓ 92 |
| RUNNER CHARLEMAINE | | 92 | | | ✓ 92 |
| COFFEE SELEN | | 92 | | | ✓ 92 |
| BAR PLACIDO | | 92 | | | ✓ 92 |
| BARBACK EDUARDO | | 92 | | | ✓ 92 |
| DELIVERY ALBERTO | | 92 | | | ✓ 92 |
| BARTENDER MANAGER | | 718 | | | ✓ 718 |
| DAVID | | 92 | | | ✓ 92 |

PARTY

| LUNCH | DINNER ✓ | DATE: 12/9/16 | | | Party BR. | |
|---|---|---|---|---|---|---|
| EMPLOYEE | CASH DUE + | | CASH DUE - 310 | | | |
| NAME | | AMOUNT | PAID | SIGNATURE | NOT PAID | |
| WAITER | | | | | | |
| BUS BOY | | | | | | |
| RUNNER | Adill Nafte | 44 | | | — 44 | |
| COFFEE | Charli | 15 | | | — 15 | |
| BAR | | | | | | |
| BARBACK | Manager | 78 | | | — 78 | |
| DELIVERY | | | | | | |
| BARTHENDER | | | | | | |

| LUNCH | DINNER ✓ | DATE: 12/9/16 | | | Party Main Room | |
|---|---|---|---|---|---|---|
| EMPLOYEE | CASH DUE + | | CASH DUE - 1400 | | | |
| NAME | | AMOUNT | PAID | SIGNATURE | NOT PAID | |
| WAITER | THEO | 129 | | | — 129 | |
| BUS BOY | Olga | 129 | | | — 129 | |
| RUNNER | Vanessa | 129 | | | — 129 | |
| COFFEE | Julia | 129 | | | — 129 | |
| BAR | Katerina | 129 | | | — 129 | |
| BARBACK | Rachel | 129 | | | — 129 | |
| DELIVERY | Natasha | 129 | | | — 129 | |
| BARTHENDER | | | | | | |

| LUNCH | DINNER | DATE: | | | | |
|---|---|---|---|---|---|---|
| EMPLOYEE | CASH DUE + | | CASH DUE - | | | |
| NAME | | AMOUNT | PAID | SIGNATURE | NOT PAID | |
| WAITER | Alberto | 64 | | | — 64 | |
| BUS BOY | Plasido | 64 | | | — 64 | |
| RUNNER | Gammon | 64 | | | — 64 | |
| COFFEE | Selena | 64 | | | — 64 | |
| BAR | Giovani | 64 | | | — 64 | |
| BARBACK | | | | | | — 64 | |
| DELIVERY | Manager | 350 | | | — 350 | |
| BARTHENDER | | | | | | |

173 from BRoom Party.
1400-350 (Manag.) + (Manag.)